UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ADALID MENDOZA,

          Plaintiff,

    v.

KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security,

          Defendant.

Case No. 1:22-cv-00101-CDB (SS)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

(Docs. 14, 16)

      Plaintiff Adalid Mendoza ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Docs. 14, 16).  Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.

///

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  *See* Commissioner SSA, https://www.ssa.gov/agency/commissioner/ (last visited September 11, 2024). Accordingly, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party").

# I.      BACKGROUND

## A. Administrative Proceedings and ALJ's Decision

On February 14, 2019, Plaintiff filed a Title XVI application for Supplemental Security Income (SSI) which alleged disability beginning January 1, 1993.  (AR 81-83, 194-199). Plaintiff's claim was initially denied on June 11, 2019, and again upon reconsideration on November 15, 2019.  (AR 91, 106).  Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on December 5, 2019.  (AR 120-124).  The ALJ, Mary Parnow, held the hearing on September 29, 2020, and Plaintiff appeared and testified.  (AR 40-65).

The ALJ issued an unfavorable decision on December 7, 2020.  (AR 17-39).  After reviewing the evidence, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R § 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 14, 2019, the date of the application.  AR 23).  The ALJ further found that Plaintiff, in fact, had no past relevant work experience.  (AR 33). At step two, the ALJ found that Plaintiff had the following severe impairments: Guillain-Barré syndrome, right knee patellar tendinitis, obesity, and bipolar disorder.  (AR 23).  The ALJ determined Plaintiff had some midfoot arthritis, cavovarus deformity, and positive tests for hepatitis C antibody reactivity but without indication that Plaintiff was symptomatic, as well as transient conditions of bilateral olecranon spurs and a triceps tendon tear, with little objective evidence they caused more than minimal functional limitation lasting twelve months or longer; none of these impairments were considered severe.  The ALJ noted she did consider them in assessing the claimant's residual functional capacity.  (AR 23).

The ALJ noted that Plaintiff had a documented history of numerous incarcerations, for charges including carrying weapons and high-speed chases.  She concluded that this history was reasonably consistent with moderate difficulties in social interaction.  The ALJ noted that Plaintiff's treating records documented a history of depressive symptoms, including feeling depressed, anhedonia, difficulty concentrating, fluctuating energy and appetite, and impulsive behaviors.  The ALJ determined that Plaintiff's impulsive behavior, particularly in financial

decisions and sexual situations, were consistent with a medically determinable bipolar disorder. (AR 27).

The ALJ ultimately determined that Plaintiff's medically determinable impairments ("MDIs") do not cause more than a moderate limitation on Plaintiff's ability to perform mental work activities. (AR 27). The ALJ reached this determination by considering the four broad functional areas of mental functioning listed in the "Paragraph B" criteria.[2]

The first functional area is understanding, remembering, or applying information. The ALJ found that Plaintiff has a moderate limitation. (AR 24). The ALJ supported her finding by noting a wide range of daily tasks, found in the medical records, that Plaintiff could accomplish, such as preparing simple meals, doing household chores, shopping in store and via computer, going to the post office, and grocery store, and performing his activities of daily living without assistance. (AR 28).

The next functional area is interacting with others. The ALJ found that Plaintiff has a moderate limitation. (AR 24). The ALJ supported this determination by noting that Plaintiff could engage in the following: living with and maintaining positive relationships with family and long-term significant others, watching movies with his sister, maintaining at least some friendships, understanding and following spoken instructions, and responding appropriately at hearings and clinical appointments. (AR 28-29).

The third functional area is concentrating, persisting, or maintaining pace. The ALJ found that Plaintiff has a mild limitation in this area. (AR 24). The ALJ cited Plaintiff's treating

---

[2] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.* An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." *Id. See Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    records, noting that Plaintiff could count change, use checkbooks or money orders, engage in

2    hobbies, exercise, watch TV for extended times, use a computer, and understand spoken

3    instructions.  (AR 29).

4           The fourth functional area is adapting or managing oneself.  The ALJ found that Plaintiff

5    has a mild limitation in this area.  (AR 24).  The ALJ noted that Plaintiff could present

6    appropriately at the hearing and at clinical appointments throughout the record, walk and do push-

7    ups, lift weights, engage in physical therapy, and handle daily stressors associated with his

8    condition and with changes in routine.  (AR 29).

9           The ALJ extensively cited the primary mental health treating records in the file, the Kern

10   Behavioral Health and Recovery Services records (Exhibit 4F), in her discussion of her

11   "Paragraph B" findings.  (AR 27-29).  The ALJ determined that none of Plaintiff's medically

12   determinable mental impairments caused more than moderate limitations in any of the "Paragraph

13   B" functional areas and that the severity of Plaintiff's bipolar disorder impairments do not meet or

14   medically equal the criteria found in 20 C.F.R. Pt. 404, subpt. P, app. 1.  (AR 24).

15          At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal any

16   of the per se disabling impairments listed in 20 C.F.R. Pt. 404, subpt. P, app. 1.  The ALJ then

17   assessed Plaintiff's residual functional capacity ("RFC").  The ALJ found that Plaintiff retained

18   the RFC to perform a reduced range of light work and simple tasks in a routine work

19   environment, with additional physical and postural limitations.  (AR 24).

20          The ALJ acknowledged that while Plaintiff's impairments could reasonably be expected

21   to cause his alleged symptoms, the ALJ found that Plaintiff's statements concerning intensity,

22   persistence, and limiting effects of the symptoms were not entirely consistent with the medical

23   evidence.  (AR 26, 29-30).  The ALJ noted that Plaintiff generally responded well to treatment

24   but had a history of noncompliance, further finding that there was little mention in the treating

25   record of reported medication side effects that Plaintiff was unable to tolerate, despite Plaintiff's

26   claim he did not take all of his prescribed psychotropic medications because he did not want

27   negative side effects.  (AR 29-30).

28          In finding the above residual functional capacity, the ALJ recounted the findings of the

4

physicians and medical professionals in the treating record, as well as the nonmedical opinions of Plaintiff's sister, Araceli Mendoza, and Plaintiff's girlfriend, Reyna Dominguez.  (AR 30-33).

At step four, the ALJ found little documented evidence of any substantial gainful activity within the last fifteen years and determined that Plaintiff has no past relevant work.  (AR 33). The ALJ noted that Plaintiff admitted he stopped working in 2006 because he went to prison, rather than due to functional difficulties arising from disabling impairments, suggesting that he could have otherwise continued working and raising the question of whether he was unemployed for reasons other than functional limitations.  (AR 30).  At step five, the ALJ determined, based on testimony from a vocational expert, that Plaintiff could perform work that exists in significant numbers in the national economy, such as garment folder, cleaner, and marker.  (AR 33-34).  The ALJ made a finding of "not disabled" under section 1614(a)(3)(A) of the Social Security Act. (AR 34).

Plaintiff filed a request for review on February 1, 2021, which was denied by the Appeals Council on November 22, 2021.  (AR 6, 191).  After exhausting his administrative remedies, Plaintiff brought the instant action on January 22, 2022 and seeks judicial review pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  Plaintiff filed his motion for summary judgment on May 21, 2022. (Doc. 14).  Defendant filed their opposition and cross-motion for summary judgment on August 4, 2022.  (Doc. 16).

**B.  Medical Record and Hearing Testimony**

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

**II.      STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

1   equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

2   citation omitted).  "It is such relevant evidence as a reasonable mind might accept as adequate to

3   support a conclusion."  *Healy v. Astrue*, 379 F. App'x 643, 645 (9th Cir. 2010).  In determining

4   whether the standard has been satisfied, a reviewing court must consider the entire record as a

5   whole rather than searching for supporting evidence in isolation.  *Id.*

6          In reviewing a denial of benefits, a district court may not substitute its judgment for that of

7   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

8   to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

9   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

10  harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

11  nondisability determination."  *Id.* (quotation and citation omitted).  The party appealing the ALJ's

12  decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

13  U.S. 396, 409-10 (2009).

14         **A.  Applicable Legal Standards**

15         A claimant must satisfy two conditions to be considered "disabled" within the meaning of

16  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

17  activity by reason of any medically determinable physical or mental impairment which can be

18  expected to result in death or which has lasted or can be expected to last for a continuous period

19  of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

20  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

21  considering his age, education, and work experience, engage in any other kind of substantial

22  gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

23         The Commissioner has established a five-step sequential analysis to determine whether a

24  claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

25  Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

26  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

27  claimant is not disabled.  20 C.F.R. § 416.920(b).

28         If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id*.  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis

1   concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

2   The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

3   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

4   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

5   work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

6   *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7   **B.  Submission of Documents After the Hearing**

8   Social Security regulations require a claimant to inform the ALJ about or submit any

9   written evidence no later than five (5) business days before the date of the hearing.  20 C.F.R. §§

10  404.935(a), 416.935(a).  If a claimant fails to meet this requirement, the ALJ "may decline to

11  consider or obtain the evidence," unless certain exceptions apply.  *Id.*  Those exceptions include

12  an unusual, unexpected, or unavoidable circumstance beyond claimant's control that prevented

13  them from informing the ALJ about or submitting the evidence earlier.  20 C.F.R. §§

14  404.935(b)(3), 416.935(b)(3).  One example of such a circumstance is where a claimant has

15  "actively and diligently sought evidence from a source and the evidence was not received or was

16  received less than 5 business days prior to the hearing."  20 C.F.R. §§ 404.935(b)(3)(iv),

17  416.935(b)(3)(iv).  If a claimant has missed the deadline because of one of the listed exceptions,

18  the ALJ "will accept the evidence" if he or she has not yet issued the decision."  20 C.F.R. §§

19  404.935(b), 416.1435(b).

20  "It is the burden of a claimant seeking DIB and SSI to present evidence of disability.

21  Although the [r]egulations are not intended to exclude relevant evidence – notably, the five-day

22  rule requires consideration of late evidence if any of a number of factors exist – they must (and

23  do) provide some limits on what ALJ's are required to consider."  *Vickie M. v. Saul*, No. 2:19-

24  CV-01740-GJS, 2020 WL 1676624, at *5 (C.D. Cal. Apr. 6, 2020).

25  **C.  Consultative Examinations**

26  It is the ALJ's duty to investigate the facts and develop the arguments both for and against

27  granting benefits.  *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th

28  Cir.1998); 20 C.F.R. §§ 404.1512(d)-(f).  This duty to develop the record is "especially important"

where, as here, the claimant alleges a mental impairment. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). This duty may require that the ALJ obtain additional information by, *inter alia*, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a. However, the ALJ's duty to develop the record attaches only when there is ambiguous evidence or when the record is inadequate to allow proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). A conflict in evidence is not the same as an ambiguity. *See, e.g., Kaur v. Kijakazi*, No. 1:22-cv-0697-JLT-CDB, 2023 WL 6241821, at *2 (E.D. Cal. Sept. 26, 2023) (citing *Zargi v. Comm'r of Soc. Sec.*, No. CIV S-08-1677-CMK, 2009 WL 1505311, at *19 (E.D. Cal. May 27, 2009)). "Ambiguous evidence means incapable of explanation, while conflicts in the record can be confronted by the ALJ without additional evidence, including inconsistencies as resulting from plaintiff's lack of credibility." *Id.* (internal quotation and citation omitted).

The ALJ "has broad latitude in ordering a consultative examination. The government is not required to bear the expense of an examination for every claimant. Some kinds of cases, however, do normally require a consultative examination, including those in which additional evidence needed is not contained in the records of [the claimant's] medical sources, and those involving an ambiguity or insufficiency in the evidence [that] must be resolved." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citations and quotations omitted).

## III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application for SSI. (Doc. 1). Plaintiff argues remand is warranted because: (1) the ALJ offered only a limited rationale for his findings regarding psychological impairments and the resulting disability determination, (2) the ALJ failed to admit evidence filed after the hearing, and (3) the ALJ failed to order a consultative examination which, Plaintiff claims, would have allowed a more objective analysis of his complaints relating to psychological impairments and resulting disability. (Doc. 14, 4-5). Plaintiff prays for review of "newly exhibited records" and a consultative examination, after consideration of which a new decision should be issued. *Id.* at 5.

///

**A.  Whether the ALJ Failed to Provide a Proper Basis for the Disability Determination on Psychological Impairments**

Plaintiff asserts that the ALJ provided only a limited rationale as to the disability determination regarding psychological impairments.  (Doc. 14 at 4).

In the reconsideration determination, Plaintiff was found to have the impairment of "12.04 – Depressive, Bipolar, and Related Disorders."  (AR 101-102).  Listing 12.04 requires that Plaintiff must satisfy "Paragraph A" and either "Paragraph B" or "Paragraph C."  20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04.

As described in section I above, the ALJ provided her reasoning in some detail as to why Plaintiff did not satisfy the "Paragraph B" criteria.  (AR 24, 27-29).  The ALJ found that Plaintiff has a moderate limitation in understanding, remembering, or applying information.  (AR 24). The ALJ supported her finding by noting a wide range of daily tasks, found in the medical records, that Plaintiff could accomplish, such as preparing simple meals, doing household chores, shopping in store and via computer, going to the post office, and grocery store, and performing his activities of daily living without assistance.  (AR 28).

The ALJ found that Plaintiff has a moderate limitation when interacting with others.  (AR 24).  The ALJ supported this determination by noting that Plaintiff could engage in the following: living with and maintaining positive relationships with family and long-term significant others, watching movies with his sister, maintaining at least some friendships, understanding and following spoken instructions, and responding appropriately at hearings and clinical appointments.  (AR 28-29).

The ALJ found that Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace.  (AR 24).  The ALJ cited Plaintiff's treating records, noting that Plaintiff could count change, use checkbooks or money orders, engage in hobbies, exercise, watch TV for extended times, use a computer, and understand spoken instructions.  (AR 29).

The ALJ found that Plaintiff has a mild limitation in managing himself.  (AR 24).  The ALJ noted that Plaintiff could present appropriately at the hearing and at clinical appointments throughout the record, walk and do push-ups, lift weights, engage in physical therapy, and handle

10

daily stressors associated with his condition and with changes in routine.  (AR 29).

The ALJ extensively cited the primary mental health treating records in the file, (the Kern Behavioral Health and Recovery Services records (Exhibit 4F)), in her discussion of her "Paragraph B" findings.  (AR 27-29).  The ALJ determined that none of Plaintiff's medically determinable mental impairments caused more than moderate limitations in any of the "Paragraph B" functional areas and that the severity of Plaintiff's bipolar disorder impairments do not meet or medically equal the criteria found in 20 C.F.R. Pt. 404, subpt. P, app. 1.  (AR 24).

Additionally, the ALJ considered "Paragraph C" and determined that the evidence fails to establish the presence of satisfying criteria, "given the claimant's relatively intact daily activities and capacity for adapting, as further discussed below."  (AR 24).

"Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04(C)(1).  As recounted in section I, the ALJ found Plaintiff was able to "occasionally drive (including driving himself to a consultative examination), take out the trash, pick up kids toys, prepare simple meals such as sandwiches, generally help his mother with household chores without help or encouragement, shop for necessities in stores and by computer about twice a month for about 30 minutes at a time, perform his own activities of daily living without assistance, and do errands such as going to the post office or grocery store without assistance" (AR 28), as well as "live with family (at times including his mother, his sister, and five nieces and nephews), maintain positive relationships with family members and a long-term significant other, watch movies with his sister for about five hours a day, maintain at least some friendships and talk to his friends on the phone every other day, shop in stores, get along with authority figures without problem, and generally respond appropriately at the hearing and at clinical appointments throughout the record, consistent with at most moderate difficulties interacting with others" (AR 28-29).

The ALJ provided substantial evidence as to why Plaintiff does not satisfy the requirement of a "highly structured setting that is ongoing," due to the activities of daily life that he regularly engages in.

"Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.04(C)(2). Also as recounted in section I, the ALJ analyzed Plaintiff's abilities regarding adapting and managing oneself, determining that Plaintiff "was able to handle daily stress associated with his condition and handle changes in routine well despite his difficulties, and the undersigned observed that he was able to generally present appropriately at the hearing and at clinical appointments throughout the record. This is consistent with at most mild difficulties adapting and managing oneself." (AR 29). *See*, *e.g.*, *Keller v. Kijakazi*, No. 3:22-CV-707-WVG, 2023 WL 6149902, at *7 (S.D. Cal. Sept. 19, 2023) (finding that ALJ did not err in analysis of "Paragraph C" criteria because adequate support and discussion of impairments were provided in a separate section of the decision). As such, the ALJ provided substantial evidence to conclude that Plaintiff did not satisfy either "Paragraph B" or "Paragraph C" of listing 12.04.

The Court, considering the record as a whole, finds that the ALJ presented substantial evidence sufficient to support her conclusions and, therefore, did not fail to provide a proper basis for the disability determinations regarding Plaintiff's psychological impairments. *See e.g., Darrell H. v. Comm'r of Soc. Sec.*, No. C21-0228-SKV, 2021 WL 3856062, at *5 (W.D. Wash. Aug. 30, 2021) ("Because Plaintiff fails to establish that any [§ 416.1435(b)] exception applied, it was within the ALJ's discretion to decline to accept the [belatedly submitted] evidence."), *aff'd*, 2022 WL 12325226, at *1 (9th Cir. Oct. 21, 2022) ("The AJL acted within his discretion when he did not accept the unexplained late filing and did not misapply 20 C.F.R. § 416.1435(b).").

**B. Whether the ALJ Failed to Properly Consider Records Submitted After the Hearing**

Plaintiff asserts that, despite being granted permission to provide them, the ALJ failed to properly consider newly discovered psyche treatment records submitted after the hearing. (Doc. 14 at 5).

On December 17, 2019, after Plaintiff requested a hearing before an ALJ, the Social Security Administration sent Plaintiff a letter informing him about the ALJ hearing process, prior

to the scheduling of a date for the hearing.  In that letter, Plaintiff was informed that: "You are required to inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.  You must inform us about or give us evidence no later than five business days before the date of your hearing.  The ALJ may choose to not consider the evidence if you fail to provide it timely."  (AR 125-127).

In the "Notice of Hearing" letter dated July 15, 2020, the Plaintiff was informed that the hearing would be held on September 29, 2020, before ALJ Mary P. Parnow.  (AR 140, 144).  The notice instructed Plaintiff as follows:

> You are required to inform us about or submit all evidence known to you that relates whether or not you are blind or disabled. **If you are aware of or have more evidence, such as recent records, reports, or evaluations, you must inform me about it or give it to me no later than 5 business days before the date of your hearing. If you do not comply with this requirement, I may decline to consider the evidence unless the late submission falls within a limited exception.**
>
> If you missed the deadline to inform us about or submit evidence, I will accept the evidence if I have not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:
>
> 1.  Our action misled you;
>
> 2.  You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> 3.  Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

(AR 141-142) (emphasis in original).   In Plaintiff's letter brief prior to the hearing, dated September 1, 2020, but stamped "received" on September 22, 2020, Plaintiff states there may be additional records that he is in the process of obtaining, and asks that they be allowed entered as exhibits even after the date of the hearing.  (AR 332).

On October 8, 2020, nine days after the September 29 hearing, Plaintiff submitted fifteen pages of records from Kern Behavioral Health and Recovery Services. The records were dated December 2018 to April 2020.  (AR 66-80).  In the ALJ's decision, she explains that the Plaintiff

1  informed her about this additional written evidence less than five business days before the

2  scheduled hearing date.  She states the following:

> 3  At the hearing, the claimant's representative asked the undersigned to hold the
> 4  record open for recent Clinica Sierra Vista mental health records, and the
>    undersigned granted this request . . . Therefore, post hearing, the record was
> 5  held open for 14 days to receive these records and to decide whether to order a
>    psychological consultative examination. The claimant's representative did not
> 6  report other outstanding medical records. On October 8, 2020, however, the
>    claimant's representative instead submitted 15 pages of records from Kern
> 7  Behavioral Health and Recovery Services dated December 2018 to January
>    2020, a period significantly prior to the hearing date. These records are not the
> 8  recent mental health records from Clinica Sierra Vista of which the undersigned
>    had been notified, and the representative did not provide an explanation of why
> 9  these records were submitted late. The undersigned Administrative Law Judge
> 10 declines to admit this evidence because the requirements of 20 CFR
>    416.1435(b) are not met.
> 11

12  (AR 20-21).  A review of the hearing transcript supports the ALJ's description.  In brief, upon

13  being asked by the ALJ whether any new exhibits needed to be entered into evidence, counsel

14  for Plaintiff represented that he had been attempting since September 2, 2020, to acquire adult

15  mental health records from Clinica Sierra Vista, and needed additional time to obtain them.  He

16  noted this was, in particular, because there did not seem to be any "psych condition" evaluations

17  in the record since 1993.  The ALJ then agreed to hold the record open for the Clinica Sierra

18  Vista records for fourteen (14) days after the hearing.  (AR 44-45).

19      The ALJ found Plaintiff did not provide a reason under 20 CFR § 416.1435 to accept the

20  records, as he did not provide any accompanying explanation or good cause for the late

21  submission.  The ALJ expressly relied on the language of the aforementioned regulation:

> 22  There is little evidence that the claimant did not inform the undersigned about
>     or submit the evidence before the deadline because the agency's action misled
> 23  them. The claimant and his representative do not allege that the claimant had a
>     physical, mental, educational, or linguistic limitation(s) that prevented him
> 24  from informing the agency about or submitting the evidence earlier; or that
>     some other unusual, unexpected, or unavoidable circumstance beyond his
> 25  control prevented him from informing the agency about or submitting the
> 26  evidence earlier.

27

28   (AR 21).  A review of the Kern Behavioral Health and Recovery Services records supports the

ALJ's contentions.  (AR 66-80).  They consist of 15 pages, with printing dates either on September 29 or September 30, 2020 and with the earliest date contained in the records falling in December 2018.  (AR 68, 70-80).  The ALJ states the latest date mentioned in the records as being in January 2020; however, an "end date" for a medication seems to fall in April 2020.  (AR 69).  However, this is a harmless error and does not change the analysis, as even so, April 2020 is roughly five months before the hearing date in late September 2020 and does not provide a basis to claim any exception under 20 CFR § 416.1435.

Plaintiff provides no reasoning for why he began attempting to obtain these records as late as September 2, 2020.  Additionally, even if the records were from Clinica Sierra Vista as Plaintiff represented at the hearing, that similarly would not result in an exception, as they would still long predate the hearing and Plaintiff's failure to allege an exception would remain.

In a case before the Central District of California, counsel for plaintiff began seeking medical records only after the hearing was scheduled and requested a formal subpoena only weeks before the scheduled hearing date.  Two days prior to the hearing, counsel for plaintiff received a voluminous quantity of records, which he sought to be entered into evidence at the hearing, and was denied by the ALJ.  *See Vickie M.*, 2020 WL 1676624, at *4-5.  The court denied plaintiff's appeal, citing 20 C.F.R. § 404.935 regarding the late submission of evidence. *Id.*  The court stated that counsel "appears to have ignored his client's case almost completely for nearly two years, only seeking a large mass of documents after the hearing before the ALJ was scheduled.  Counsel below was seeking, for the most part, old records…The fact that counsel below waited until just a few weeks before the hearing to request a subpoena is fatal to [p]laintiff's diligence argument."  *Id.* at *4.  In the instant action, Plaintiff has no claim to any such diligence argument and Plaintiff appears to have delayed in requesting old records.

The ALJ cited the appropriate regulation and complied with the Commissioner's internal guidance on the matter, which provides that "if an ALJ does not find that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply, the ALJ will not exhibit the untimely evidence and will explain his or her reason for not considering it."  The guidance also provides that "[t]he ALJ can provide these reasons on the record at the hearing, in a written ruling that the ALJ exhibits, or in

15

1   the ALJ's decision."  Consistent with agency guidance, the ALJ may briefly explain in the text of

2   the decision that additional evidence was submitted, "specifically identifying the evidence,

3   usually by source, date, and number of pages," find that "the claimant did not establish a reason

4   under 20 CFR 404.935 and 416.1435 for not informing the agency about or submitting it within

5   the required timeframes," and decline to consider the evidence.[3]

6        The Court finds that the ALJ did not err in refusing to admit the late-submitted Kern

7   Behavioral Health and Recovery Services records.  Plaintiff did not provide the adequate basis

8   under 20 C.F.R. § 416.1435(b) to admit the records, as they were submitted nine days after the

9   hearing.  Plaintiff received adequate notice and did not demonstrate diligence, being informed of

10  the deadline to submit all evidence at least five business days before the hearing, in both the

11  initial letter informing him about the hearing process and the subsequent letter setting his hearing

12  date.

13      **C.  Whether the ALJ Erred in Declining to Schedule a Consultative Examination**

14       Plaintiff asserts that the ALJ erred in declining to schedule a psychiatric consultative

15  examination.  (Doc. 14 at 5).  On September 1, 2020, Plaintiff requested a consultative

16  examination "in [p]syche."  Plaintiff stated that the "records of disability contains [sic] plenty of

17  evidence of diagnoses and treatment, but the limitations are not fully vetted."  (AR 325).  Plaintiff

18  repeated the request in his letter brief prior to the hearing with the ALJ (dated September 1, 2020,

19  but stamped "received" on September 22, 2020), stating that the consultative examination was

20  needed to address any additional disability stemming from his bipolar disorder.  (AR 331).

21  Plaintiff raised the issue during the hearing with the ALJ on September 29, 2020, as evidenced in

22  the hearing transcript, due to a lack of "any evaluations of psych condition in the record until

23  going back until [sic] 1993"; the ALJ stated she would consider the request and provide her

24  decision in writing.  (AR 45).  In her decision on December 7, 2020, the ALJ stated that she "does

25  not find it necessary based on the record … which reflects minimal abnormal mental health

26  findings."  (AR 21).  She then stated Plaintiff's counsel "has not submitted the outstanding recent

27
28       [3] *See* HALLEX, Admitting Evidence Submitted Less Than Five Business Days Before the Hearing or At or After the Hearing, § I-2-6-59(C) (May 1, 2017), available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-59.html (last visited Nov. 8, 2024).

1   mental health records from Clinica Sierra Vista." *Id.*

2       Plaintiff raised the issue again on February 1, 2021, in his correspondence to the Appeals

3   Council seeking review of the ALJ's decision.  In that document, Plaintiff states the following:

4           Most importantly however is the Court stated that the willingness to order a
5           consultative examiner [sic] was predicated on additional psyche records that
            claimant ask [sic] to be allowed for at the time of the hearing. Yet nothing about
6           claimant's 9-1-20 request was predicated on these records. Rather this was
            requested because the record did not establish a good record of any psyche
7           disability upon which the Court could rely.

8

9   (AR 337).  Plaintiff uses identical language in the instant motion for summary judgment.  (Doc.

10  14 at 5).

11      On consideration of Plaintiff's initial application, physician Francis T. Greene provided

12  that a light RFC is reasonable.  (AR 85-90).  He does not mention Plaintiff's mental health in his

13  findings.  On August 7, 2019, upon reconsideration of Plaintiff's SSI application, disability

14  adjudicator/examiner J. Lee spoke to Plaintiff regarding his medical issues.  In his description of

15  the conversation, J. Lee notes that Plaintiff "reported he did receive medication for bipolar

16  [disorder].  He said he was taking Effexor.  He is taking neurotin for his anxiety and anger

17  problems."  (AR 98).  "Neurotin" is likely a misspelling of the drug Neurontin.  The initial

18  application decision does not mention receiving the Kern Behavioral Health and Recovery

19  Services records but the reconsideration decision does.  (AR 99).

20      The reconsideration findings mention "[d]iscovered impairments: bipolar d/o; anxiety;

21  anger problems."  *Id.*  The findings review Plaintiff's mental health records in some detail, in a

22  chronological format from February 26, 2018, to September 18, 2019.  (AR 99-101).  In the final

23  recommendations and conclusions section, physician M.D. Morgan mentions that Plaintiff did not

24  allege any psychological impairments in the initial application but, upon speaking to Plaintiff by

25  phone, noted Plaintiff reported being on medication for bipolar disorder and Neurontin for anxiety

26  and anger problems; Dr. Morgan then notes the evidence relating to mental health is consistent

27  with a non-severe determination.  (AR 101).  "2960 – Depressive, Bipolar and Related Disorders"

28  is listed under the impairment section of the reconsideration determination, noting it as non-

17

1    severe; below this it is marked as "12.04 – Depressive, Bipolar, and Related Disorders" under the

2    "A" and "B" criteria.  Under "Paragraph A," it is stated that the impairment "does not precisely

3    satisfy the diagnostic criteria above"; under "Paragraph B," Plaintiff is determined to have mild

4    limitations in all four subcategories.  The determination states that "C" criteria is not established

5    under the evidence, and it was signed by Dr. Morgan on September 24, 2019.  (AR 101-102).

6         In her decision, the ALJ stated she did not find a consultative examination

7    necessary based on the record.  (AR 21).  The ALJ extensively cited and discussed

8    records that reflected minimal abnormal mental health findings and weighed functional

9    RFC evaluations. Plaintiff fails to identify any record inconsistency that would require

10   an ALJ to further develop the record.  In short, where, as here, the record demonstrates

11   the ALJ properly considered the record as a whole, including function-by-function RFC

12   examinations by Drs. Roger Wagner and D. Morgan (AR 30-31), the ALJ properly

13   exercised her discretion to decline to order a consultative examination.  *See Albrecht v.*

14   *Astrue*, No. 1:11–cv–01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012)

15   ("a consultative examination regarding Plaintiff's physical impairments was not

16   necessary here because the existing evidence was sufficient to support the ALJ's

17   determination and such an exam was not needed to resolve an inconsistency"); *Garcia v.*

18   *Astrue*, No. C 08–3833 MHP, 2010 WL 1293376, at *5 (N.D. Cal. Mar. 31, 2010)

19   (finding no error by ALJ in declining to order consultative examination where his review

20   of the record including function-by-function RFC examinations) (distinguishing *Reed*,

21   270 F.3d at 842).

22        Further, as discussed above in subsection (B), the ALJ did not err in refusing to admit the

23   late-filed evidence from Kern Behavioral Health and Recovery Services.  The ALJ considered

24   other records from Kern Behavioral Health and Recovery Services that were timely submitted by

25   Plaintiff and entered into evidence, consisting of ninety-three pages.  (AR 420-512).  Mental

26   health diagnoses, symptoms, and treatment plans are discussed numerous times over many

27   appointments, including depression, anxiety, anger, substance abuse, excessive energy, trauma,

28   suicide attempts, and bipolar disorder diagnosis.  (AR 424-425, 428-432, 438, 440-441, 443, 449,

1    452, 454, 460-462, 471, 478-479, 481, 484, 487-488, 490, 493, 496-498, 501, 504-505).  The ALJ

2    extensively cited these records (as Exhibit 4F) in her discussion of her "Paragraph B" findings.

3    (AR 27-29).  The ALJ determined that none of Plaintiff's medically determinable mental

4    impairments caused more than moderate limitations in any of the "Paragraph B" functional areas

5    and that the severity of Plaintiff's bipolar disorder impairments do not meet or medically equal

6    the criteria found in 20 C.F.R. Pt. 404, subpt. P, app. 1.  (AR 24).

7            Even if the ALJ had admitted the late-filed Kern Behavioral Health and Recovery Services

8    records, they are substantially similar to the evidence already in the record.  They do not appear to

9    provide any materially new or different evidence, nor do they contradict the findings of other

10   physicians.  This case does not exhibit a lack of needed medical records nor an insufficiency in

11   the medical records provided, nor does it present a case of ambiguous or contradictory evidence.

12   *Cf. Reed*, 270 F.3d at 842.

13           The Court finds that the ALJ did not err in declining to order a consultative examination.

14   **IV.    CONCLUSION**

15           For the reasons stated above, the Court ORDERS as follows:

16           1.      Plaintiff's Motion for Summary Judgment (Doc. 14) is DENIED;

17           2.      Defendant's Cross-Motion for Summary Judgment (Doc. 16) is GRANTED; and

18           3.      The Clerk of the Court shall enter judgment in favor of Defendant, terminate any

19                   deadlines, and close this case.

20   IT IS SO ORDERED.

21   Dated:   **November 8, 2024**

22                                                   UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

                                                    19